CASE 6—EQUITY—SEPTEMBER 29, 1880.

# Bidwell v. Robinson & Wallace.

APPEAL FROM KENTON CHANCERY COURT.

1. That a *feme covert*, upon the petition of her husband and herself, is "authorized and invested with power to sue and be sued, contract and manage, sell, convey, and dispose by will, any property now owned by her, or which she may hereafter acquire, either in real estate, personal property, or choses in action," confers no power upon her to contract so as to make herself liable as the surety of her husband or of others.

2. This court will not, by implication, enlarge the power thus given to the *feme covert* by speculating upon the intention of the chancellor who rendered the judgment.

3. Under the law of Louisiana, a contract made by a married woman with the authority of the husband, for the benefit of another, is binding upon her, but she cannot be held bound for the debt of the husband, nor can she, conjointly with him, be bound for debts contracted by him before or during the marriage.

4. There is no evidence of any law of the State of New York holding a married woman bound as surety for the debt of her husband, unless the disability be in some way removed.

5. There is nothing in the case to authorize this court to hold appellee liable for the debts created in Louisiana or New York.

6. Upon the appeal against Wallace there is no error that will invalidate the sale of Mrs. Robinson's land to pay the debts due him.

J. F. & C. H. FISK AND R. SHACKLEFORD FOR APPELLANT BIDWELL.

1. The money sought to be recovered inured to the benefit of Mrs. Robinson. She was separated, as to property, from her husband by the judgment of a court. She had seven horses and a buffalo with the circus.

2. According to the law of New York, whenever a *feme covert* may be sued as a *feme sole*, they are sued in the same manner, and the same proceedings are had as if they were not *covert*. (Acts 1860, 1862, N. Y.; sec. 114, New York Code; 21 Howard's Pr. Rep., 312; 24 *Ib.*, 32; 58 Barb., 620; 3 Lansing, 126; 1 Hern, 714.)

3. The court correctly held that Mrs. Robinson was bound, under the law of Louisiana, upon the three notes executed to appellant in that state. Under the law of that state, she had the power to bind herself for the payment of these notes, having been empowered to act and trade as a *feme sole* by the court of her domicile. (1 La.,

Bidwell v. Robinson & Wallace.

Rep., 312; Civil Code 1870, art. 1782, 1775, 1783, 1776, 1786, 1779, 2398, 2412, 2399, 2369, 2402, 2371, 2404, 2373, 2405, 2374, 2409, 2378, 2410, 2379, and 2409; art. 131, 128, Civil Code 1870, 2315, 2294, 2383, 2360, 2384, 2361; 2d Annual Report, 440; 5 *Ib.*, 125; 8 *Ib.*, 512; 14 *Ib.*, 190; 3 Robinson's La. Rep., 329; 17 Annual, 113; 6 *Ib.*, 57; 7 *Ib.*, 293; 10 *Ib.*, 433; 14 *Ib.*, 169; 5 Martin, 196; 6 *Ib.*, 518; 7 *Ib.*, 9, 368, 498; 4 La., 467.)

4. We insist that the decree of the Kenton chancery court gives Mrs. Robinson the power to contract and be contracted with as a *feme sole*. Besides, her estate is separate from her husband. (Rev. Stat., 28; 13 B. Mon., 385; 7 *Ib.*, 293; 16 *Ib.*, 376; *Ib.*, 486; Acts 1867-'8, vol. 1, p. 5; Gen. Stat., 532; 15 B. Mon., 327; 7 Bush, 467; Myers' Supp., 728, 741; 2 Met., 238; *Ib.*, 506; 8 Bush, 177; 14 *Ib.*, 553; 2 Roper on Property, 235; Parsons on Contracts and Bills, 579; Bayley on Bills, 245; Story on Promissory Notes, 315; 1 La., 312.)

W. W. CLEARY, JNO. E. HAMILTON, AND W. LINDSAY FOR MRS. ROBINSON.

1. The power to contract was not given to appellee by the judgment of the Kenton chancery court. She can sell and convey property, but cannot bind herself by a promissory note.

2. The law of another state must be pleaded as a fact. (Root v. Meriwether, 8 Bush, 397.)

3. There is no proof tending to show that, when the Nathen note was executed, Mrs. Robinson was transacting business in New York as a *feme sole*.

4. The proof is, that this note evidenced the debt of James Robinson and F. Pastor.

5. Under the law of Louisiana, Mrs. Robinson cannot be held bound for the debt of her husband.

6. The husband must empower her to contract. (Art. 122, Civil Code, La.; art. 123, 226, 127, 2383, 2337, 2349, 2402, 1786, 2398; 19th Annual Rep., 48.)

7. If Mrs. Robinson was interested in the circus adventure, then it was a "community debt," "to be acquitted out of the common fund," and not out of the separate estate of the wife. (Civil Code La., 2402, 2403.)

C. G. WALLACE FOR APPELLEE.

1. The appellant's assignment of errors are too general, and this court will refuse to consider them. (O'Reagan v. O'Sullivan, 14 Bush, 184.)

2. If the errors are properly assigned, they are totally unsustained by the record.

Bidwell v. Robinson & Wallace.

·JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Laura F. Robinson, the wife of James Robinson, executed three several notes, amounting in the aggregate to twenty-five hundred dollars, to the appellant, D. Bidwell, upon which the present action was instituted, and an attachment ·obtained and levied, by virtue of which the appellant sought to subject the real and personal estate owned and possessed by her in the city of Covington.

The notes were dated "New Orleans, January 10th, 1873," and payable in sixty and ninety days to the appellant, who was at the time a resident of that city, and being payable to her order, were also indorsed by her as well as by her husband, and one Frank Pastor.

An action was also instituted against her on an open account, amounting to six or seven hundred dollars, and ·during the progress of the litigation an amended petition was filed, in which the appellant alleges that he is the owner ·of a note executed by the said Laura, James Robinson (the husband), and Frank Pastor, jointly, to one Nathen, for the sum of one thousand five hundred and eighty dollars; that this note was executed and delivered by the parties to the original payee in the city of New York, where the said Laura was transacting business, and had the power to bind herself and her separate estate for the payment of the debt.

The chancellor, through his commissioner, took possession ·of the real estate of Mrs. Robinson, and rented it out during the pendency of the action, and upon the final hearing re-fused to subject her real estate to the payment of the several ·claims, but held that her personal estate was liable, and ·subjected the same accordingly.

The appellant, Bidwell, appeals from the judgment, and the appellee, Mrs. Robinson, prays a cross-appeal, and

Bidwell v. Robinson & Wallace.

insists that she is not responsible for the debts of her husband by reason of any of the obligations signed by her.

It is conceded that the appellee was a married woman at the date of the execution of the several notes declared on, and she is sought to be held liable, first, because by a proceeding in the Kenton chancery court, under the act of February 14th, 1866, she was authorized to contract as a *feme sole;* and secondly, that by the laws of Louisiana and New York, where the obligations or notes were executed and delivered, and where the payees at the time lived, a *feme covert* was authorized to make such contracts, and to bind her estate for the payment.

A demurrer was filed by the appellees to the petition, upon the ground that the laws of the two states, under which the feme is attempted to be made liable, are not set forth *in haec verba* or the substance given. This court, in the case of Roots v. Meriwether, reported in 8th Bush, determined that the law of another state must be pleaded as any other fact, and with such distinctness as would enable the court to pass on the effect of the law. Various amendments were filed in this case, but whether with a view to cure this defect does not certainly appear; and although the pleading may be regarded as defective, as the case can be finally disposed of, we will pass from the consideration of that question to its merits.

The question first to be determined is: "Had Mrs. Robinson the power to contract by reason of the judgment of the Kenton chancery court, rendered under the act of February, 1866." That enactment is embodied in the General Statutes, and authorizes the chancellor, on the petition of the husband and wife, or when the husband is a defendant, upon a proper state of case, to empower the wife "to

Bidwell v. Robinson & Wallace.

use, enjoy, sell and convey, for her own benefit, any property she may own or acquire, free from the claims or debts of her husband; or to make *contracts, sue and be sued,* as a single woman, or trade in her own name, or dispose of her property by will or deed, &c., *either one or more or all of the powers herein enumerated may be granted;* but in all cases the wife's property shall be liable for her debts, contracts, and liabilities."

On the joint petition of the husband and wife, Mrs. Robinson was "authorized and invested with power to sue and be sued, control and manage, sell and convey, dispose of by will or otherwise, any property now owned by her, or which she may after acquire, either in real estate, personal property, or choses in action."

The power given the *feme* by this judgment confers upon her no right to contract so as to make herself liable as the surety of her husband or as the surety of others; but, on the contrary, she is limited in the exercise of the power conferred to the acquisition and disposal of property in her own right, whether real or personal, such as she then owned or might thereafter acquire. The right *to sue and be sued,* while it would ordinarily imply the right to contract with reference to any matter the subject of a contract, must be held to be limited in its meaning in this case, when, in permitting the wife to sue and be sued, the chancellor has restricted her, in the exercise of the power conferred, to the control and management of her estate, with the right to acquire and dispose of the same as if she was a *feme sole.* The right to sue and be sued is to enable her to exercise the power conferred, and not to contract with reference to matters in which she has no interest, and from which she

can derive no benefit. The general power to contract and be contracted with has been withheld by the chancellor under that clause of the statute by which he is authorized to vest in the *feme covert* "*either one or more or all the powers herein enumerated.*" This court will not, by implication, enlarge the powers of the *feme covert* by speculating upon what might have been the intention of the chancellor when entering his judgment.

He is given the discretion to limit the rights of the wife as to the exercise of the powers conferred by the act; and this court would be reluctant to hold the wife liable for the contracts or debts of the husband, unless the intention of the chancellor is so manifest as to leave but little doubt as to the extent of the power given. We therefore concur with the court below, that Mrs. Robinson could not, by reason of the proceedings in the Kenton chancery court, bind herself as the surety of her husband or those interested with him.

The chancellor held that, by the laws of Louisiana, the wife could bind herself for the three notes executed to the appellant, and as the notes were executed and delivered by the *feme covert* to the appellant in New Orleans, who was at the time a resident of that city, it became necessary to ascertain the liability of the appellee under the laws of Louisiana. A contract made by a married woman, with the authority of the husband, for the benefit of another, is binding upon her under the law of that state; but the wife cannot be held for the debt of the husband, the Civil Code of that state expressly prohibiting the courts from conferring on the wife the power to contract liabilities for the purpose of paying the husband's indebtedness. (Article 127, Civil Code.)

"The wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for

Bidwell v. Robinson & Wallace.

her husband, nor conjointly with him, for debts contracted by him before or during the marriage."

There is no controversy, however, between the parties as to what the *lex loci* is in this case, and the trouble arises in determining whether the notes were executed for the debts of third parties, or for her own indebtedness, or on account of the indebtedness of her husband. It is alleged in the petition that the defendants, James Robinson, his wife, Laura, and Pastor, were the owners and proprietors of a circus, and that the indebtedness arose from transactions between the parties in relation to that enterprise; but the chancellor finds that the debt, or the principal part of it, was the debt of Russell, Morgan & Co., and for that reason holds the married woman bound. It does appear from the record that Robinson, Pastor, and one Prescott were at one time the owners of this circus, and being indebted to the firm of Russell, Morgan & Co., the circus and its appendages were sold to the latter firm in the year 1872.

After this sale took place, Robinson (the husband) and Pastor rented the entire circus property from Russell, Morgan & Co., at the price of $600 per week, and entered into a contract with the appellant to exhibit in several southern cities. They were exhibiting under the management of the appellant, Bidwell, in the city of New Orleans, at the time these notes were executed, under a contract made between James Robinson and one Spalding, the agent of the appellant. Russell, Morgan & Co. had no connection with any contract made between the appellant and the defendants, Robinson and Pastor. It is not pretended that they made any contract, either in person or by an agent, and the only interest shown by the record that they asserted was the right to demand of Robinson & Pastor the $600 per week, the

amount of their rent; nor does it appear by any proof,
except the statement of the appellant, that Mrs. Robinson
had any interest in the undertaking, but, on the contrary,
the decided weight of the testimony is that he had no
interest, either as a partner or otherwise. The principal
part of the indebtedness, according to the statement of
Bidwell, was for money loaned Mrs. Robinson in the state
of Georgia to enable the proprietors of the circus to reach
New Orleans, and after their arrival at that place the notes
were executed.

The appellant says that Mrs. Robinson told him she was a
partner; but this idea is refuted by the entire proof on that
subject. She was certainly not a partner of Russell, Mor-
gan & Co., and Morgan, one of the firm, so states, and in
this he is sustained by all the other witnesses, except the
appellant. She owned some trained horses that were ex-
hibited, regarded and known by all as her separate estate,
and there is an entire absence of proof connecting her with
the circus, so as to make her liable for the indebtedness of
the company, or to assume the liabilities incurred by the
husband; and in addition to all this, it is a little remarkable
that the appellant, after making the contract with Robinson,
and knowing that Russell, Morgan & Co. had purchased
the circus, should, upon its arrival at New Orleans, regard
Mrs. Robinson as the responsible partner of the firm. The
appellant in his testimony states that a part of the money
was advanced to Mrs. Robinson, that she might redeem
some jewelry belonging to her that was at the time in pledge.
This she denies, and says it was redeemed in Cincinnati long
after, and gives the name of the party to whom the pledge
was made. The testimony, in our opinion, is conclusive of
the fact that the debts for which these notes were given

Bidwell v. Robinson & Wallace.

were the joint liabilities of James Robinson and Pastor, and for which the appellee, Mrs. Robinson, cannot be held bound, either under the law of Louisiana or the law of this state.

The debt incurred in the city of New York was the debt of the company, and the wife of Robinson became the surety only.   She could have created no such liability under the law of her domicile, and there is no evidence going to show that she was transacting business in the state of New York as a *feme sole*, nor any law that we have been able to find on the statute-book of the latter state holding a married woman bound as the surety for the debt of the husband unless the disability of coverture has in some way been removed.   We see no reason for holding the appellee, Mrs. Robinson, liable for the claims in controversy, and the judgment must be reversed on the cross-appeal, with direc-- tions to dismiss the petition in so far as it seeks a recovery against her or to subject her estate.   As to the husband, there is no judgment for or against him.

On the appeal of Laura Robinson v. Wallace we find no error that should invalidate the sale.   The property was appraised and brought two thirds of its value, fixing the value at the highest estimate made by the appraisers.   The judgment confirming the sale made to Wallace is affirmed, and the judgment on the appeal of Bidwell v. Wallace, in so far as it affects Wallace, is also affirmed; cause remanded for further proceedings consistent with this opinion.

The appeal as to James Robinson is dismissed without prejudice.

The following additional opinion was rendered by Judge Pryor:

On a petition for rehearing, the opinion is so modified as

to reverse the judgment dismissing appellant Bidwell's claim against James Robinson for the account of $635 06. There is no defense made by Robinson to this account, and on the return of the cause, a judgment should be rendered for this account, less the credit admitted by Bidwell. There is no judgment on the Louisiana notes in favor of Robinson, but only an opinion that the latter is not liable as indorser. On the return of the cause, judgment can be entered for the amount. As to Mrs. Laura Robinson, the court is satisfied she is not liable, either under the law or the facts of the case, and the petition as to her is overruled. In the original opinion it was stated that the court below had subjected the rents of the real estate of the wife to the payment of the debts. This part of the opinion has been erased on page 2, original opinion.